UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#23/30 (7/13 HRG OFF)

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 19-2499 PSG (KKx) | Date | July 9, 2020 |
|---|---|---|---|
| Title | James D. McCool v. Denise Wilson et al. | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge |
|---|---|
| Wendy Hernandez | Not Reported |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers):**     The Court GRANTS the motion to dismiss

Before the Court is a motion to dismiss filed by Defendants Allen Matkins Leck Gamble Mallory & Natsis, LLP ("Allen Matkins") and Clark Libenson (collectively, "Defendants" or "Allen Matkins Defendants").[1] *See* Dkt. # 23 ("*Mot.*"). Plaintiff James D. McCool ("Plaintiff" or "McCool") has opposed, *see* Dkt. # 90 ("*Opp.*"), and Defendants replied, *see* Dkt. # 91 ("*Reply*"). The Court finds the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. Having considered the moving, opposing, and reply papers, the Court **GRANTS** the motion.

I.     Background

   A.     Factual Background

      i.     *McCool and Wilson Meet*

The following allegations are taken from the complaint. McCool and Denise Wilson met in the Spring of 2018 when Plaintiff's private jet landed at the Palm Springs airport where Wilson's entities provided various aviation management services through companies known as Fixed-Based Operators. *See Complaint*, Dkt. # 1 ("*Compl.*"), ¶¶ 26–28. Wilson owned and operated five California limited liability companies that provided aviation management services:

---

[1] Defendant Denise Wilson also joined in the motion to dismiss, *see* Dkt. # 30. However, Plaintiff has stated that Wilson would be voluntarily dismissed from the present lawsuit on or before June 25, 2020, pursuant to the parties' Settlement Agreement and Release. *See Opp.* 6 n.1; Dkt. # 83. Accordingly, the motion to dismiss, Dkt. # 30, is rendered moot.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 19-2499 PSG (KKx) | Date | July 9, 2020 |
|---|---|---|---|
| Title | James D. McCool v. Denise Wilson et al. | | |

Desert Jet, LLC; Desert Jet Maintenance LLC; Desert Jet Charter LLC; Desert Jet TRM LLC; and Desert Jet Center LLC (collectively, the "Desert Jet Entities"). *See id.* ¶ 33.

Plaintiff expressed satisfaction with the service, and was introduced to Wilson. *See id.* ¶ 28. They discussed Wilson's growth plans, including the plan to build a state-of-the-art hangar. *See id.* Plaintiff indicated that he could bring financial expertise to the company. *See id.* ¶ 37.

  *ii.*  *Agreements*

In order for Plaintiff to invest in the entire business, Plaintiff and Wilson agreed to form a Delaware limited liability company, Desert Jet Holdings, LLC ("Desert Jet Holdings"), to serve as a parent-holding company for the Desert Jet Entities. *See id.* ¶ 34. The transaction by which Plaintiff and Wilson formed their new business venture was comprised of three separate agreements, each entered into as of August 14, 2018 as part of a single transaction:

  (1) Contribution and Subscription Agreement between Plaintiff, Wilson, and Desert Jet Holdings (the "Contribution Agreement"). *See* Dkt. # 1-1, Ex. A ("*Contribution Agreement*").

  (2) Management Services Agreement between Plaintiff and Desert Jet Holdings (the "Management Services Agreement"). *See* Dkt. # 1-2, Ex. B ("*Management Services Agreement*").

  (3) Limited Liability Company Agreement for Desert Jet Holdings, executed by Plaintiff and Wilson as sole members of the new LLC (the "LLC Agreement"). *See* Dkt. # 1-3, Ex. C ("*LLC Agreement*").

Under the terms of the Contribution Agreement, Wilson transferred to Desert Jet Holdings 100 percent of her ownership interest in the Desert Jet Entities, in exchange for fifty-one common units of Desert Jet Holdings. *See Contribution Agreement* at 1. The fifty-one common units represented Wilson's membership interests in the new LLC. Plaintiff contributed $6 million to Desert Jet Holdings in exchange for forty-nine common units, representing Plaintiff's membership interests in the LLC. *See id.*

Under the terms of the Management Services Agreement, Plaintiff agreed to provide to Desert Jet Holdings a variety of management, marketing, and corporate finance advisory services over an initial term of ten years. *See Management Services Agreement* ¶ 2. In exchange for such services, Desert Jet Holdings agreed to pay Plaintiff a salary of $200,000 per year, plus $130,000

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 19-2499 PSG (KKx) | Date | July 9, 2020 |
|---|---|---|---|
| Title | James D. McCool v. Denise Wilson et al. | | |

as reimbursement for Plaintiff's transaction expenses. *See id.* ¶ 3. The Agreement set forth a non-exhaustive list of services to be provided by Plaintiff to the new LLC, including: "(a) general executive and management services; (b) identification, support, negotiation and analysis of company acquisitions and dispositions; (c) support, negotiation and analysis of financing alternatives, including . . . in connection with acquisitions, capital expenditures and refinancing of existing indebtedness; (d) finance functions, including assistance in the preparation of financial projections and monitoring of compliance with financing agreements . . . (f) human resources functions, including searching and hiring of executives." *See id.* ¶¶ 2–3.

Under the terms of the LLC Agreement, Plaintiff and Wilson were appointed as the sole managers of the LLC, and comprised its Management Board. *See LLC Agreement* at 2–3 §§ 2.1–2.6. Plaintiff was to be the "Investor Manager," and Wilson the "Employee Manager." *See id.* at 2 § 2.3.

### iii. Alleged Misrepresentations and Omissions

The complaint alleges that Wilson made various misrepresentations to Plaintiff and omitted material facts in connection with the three Agreements, and that Wilson provided him with financial statements for the Desert Jet Entities that did not accurately represent the financial condition of the business and were not prepared in accordance with accepted accounting principles. *See Compl.* ¶ 11. Before negotiations began, Plaintiff engaged CBIZ, a valuation firm, to determine the value of the Desert Jet Entities, and based on the books and records provided by Wilson, Plaintiff and CBIZ valued the company between $7 million and $11 million. *See id.* ¶ 36.

Plaintiff asserts that the financial statements were "materially misleading" and "intentionally misrepresented the value of the Desert Jet Entities." *See id.* ¶¶ 46, 104, 148. Plaintiff also alleges that Wilson repeatedly misrepresented that she owned 100 percent of the Desert Jet Entities, and that Wilson's husband actually maintained ownership in at least one of those entities. *See id.* ¶¶ 12, 58. Wilson assured Plaintiff that her husband "transferred all of his interests to [Wilson] before the Contribution Agreement was signed." *See id.* ¶ 59. Finally, Plaintiff alleges that Wilson concealed various liabilities of the Desert Jet Entities that materially impacted the value of those entities, including: (i) a $250,000 bank loan had been taken out by one of the Desert Jet Entities on August 8, 2018; (ii) several of the Desert Jet Entities had been sued as a result of an alleged sexual assault by Wilson's husband; (iii) a company called John Galt Industries, LLC had alleged damages against one of the Desert Jet Entities under a commercial agreement; (iv) the Desert Jet Entities owed $95,000 to Riverside County as

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 19-2499 PSG (KKx) | Date | July 9, 2020 |
|---|---|---|---|
| Title | James D. McCool v. Denise Wilson et al. | | |

reimbursement for the County's clean-up of a December 2017 oil spill on Desert Jet Property; and (v) one or more of the Desert Jet Entities owed "a portion of approximately $200,000 in unpaid state and federal taxes" from periods prior to the Contribution Agreement. *See id.* ¶¶ 68–78.

   *iv.* *Allegations against Defendants*

Plaintiff alleges that the Allen Matkins Defendants were legal counsel that represented Wilson in the matter, and that Desert Jet Holdings paid Defendants' legal bill. *See id.* ¶¶ 7, 83. Plaintiff alleges that Defendants "prepared material information about the Desert Jet Entities knowing of [Wilson's] misrepresentations and omissions," and "were aware of the undisclosed liabilities, misleading financial statements, ownership interests, and other fraud perpetrated by [Wilson]." *See id.* ¶¶ 183, 185.

  B. Procedural History

Plaintiff initiated this action on December 30, 2019 against the Allen Matkins Defendants, Denise Wilson, Adam Ochoa, and The Practice Certified Accountants, Inc. *See generally id.* Plaintiff brings the following causes of action:

First Cause of Action: Fraud against Denise Wilson. *Id.* ¶¶ 98–134.

Second Cause of Action: Negligent misrepresentation against Denise Wilson. *Id.* ¶¶ 135–40.

Third Cause of Action: Breach of contract against Denise Wilson. *Id.* ¶¶ 141–44.

Fourth Cause of Action: Violation of Cal. Corp. Code §§ 25401, 25501 against Denise Wilson. *Id.* ¶¶ 145–53.

Fifth Cause of Action: Violation of § 10(b) of the Securities Exchange Act and Rule 10b-5 against all defendants. *Id.* ¶¶ 154–63.

Sixth Cause of Action: Breach of duty of loyalty against Denise Wilson. *Id.* ¶¶ 164–78.

Seventh Cause of Action: Violation of California Corp. Code § 25504.1 against

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 19-2499 PSG (KKx) | Date | July 9, 2020 |
|---|---|---|---|
| Title | James D. McCool v. Denise Wilson et al. | | |

the Allen Matkins Defendants, and Adam Ochoa and The Practice Certified Public Accountants, Inc. *Id.* ¶¶ 179–90.

The Allen Matkins Defendants move to dismiss the fifth and seventh causes of action against them. *See generally Mot.*

II.  Legal Standard

   A.  Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In assessing the adequacy of the complaint, the court must accept all pleaded facts as true and construe them in the light most favorable to the plaintiff. *See Turner v. City & Cty. of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015); *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). The court then determines whether the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Accordingly, "for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

   B.  Rule 9(b)

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To plead fraud with particularity, the pleader must state the time, place, and specific content of the false representations. *See Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007). The allegations "must set forth more than neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about the statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). In essence, the defendant must be able to prepare an adequate answer to the allegations of fraud. Where multiple defendants allegedly engaged in fraudulent activity, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). Rather, a plaintiff must identify each defendant's role in the alleged scheme. *See id.* at 765.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 19-2499 PSG (KKx) | Date | July 9, 2020 |
|---|---|---|---|
| Title | James D. McCool v. Denise Wilson et al. | | |

C. PSLRA

Through the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Congress imposed heightened pleading standards on federal securities fraud actions. *See* 15 U.S.C. §§ 78u-4(b)(l)-(2). "The PSLRA significantly altered pleading requirements in private securities fraud litigation by requiring that a complaint plead with particularity both falsity and scienter." *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1084 (9th Cir. 2002), *abrogated on other grounds as recognized in South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008). "The purpose of this heightened pleading requirement was generally to eliminate abusive securities litigation and particularly to put an end to the practice of pleading fraud by hindsight." *Vantive*, 283 F.3d at 1084–85 (quoting *In re Silicon Graphics Sec. Inc. Litig.*, 183 F.3d 970, 973 (9th Cir. 1999)). To meet the exacting standards of the PSLRA, a plaintiff must "specify each statement alleged to have been misleading," and "the reason or reasons why the statement is misleading." *Id.* at 1085 (internal citation omitted).

III. Discussion

Defendants argue first, that Plaintiff has not alleged a "security," second, that Plaintiff has not satisfied the pleading requirements of the Federal Rules and the PSLRA, and third, that Plaintiff has not alleged a "seller" for purposes of Plaintiff's seventh cause of action. *See generally Mot.*

A. Whether Plaintiff Has Alleged "Securities"

As a threshold matter, Defendants argue that Plaintiff has not adequately pleaded a "security," such that the Acts would apply to them. *See Mot.* 16:5–18:11. Plaintiff's fifth cause of action is based on § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b-5, and Plaintiff's seventh cause of action is based on California Corporations Code § 25504.1. *See FAC* ¶¶ 154–63, 179–90. In order to state a claim for violation of Section 10(b), Rule 10b-5, or California Corporations Code § 25504.1, a plaintiff must adequately plead the sale of a security.

Under federal law, the statutory definition of a security is set forth in 15 U.S.C. § 77b(a)(1), which states that a "security" means "any note, stock . . . investment contract . . . ." *See Warfield v. Alaniz*, 569 F.3d 1015, 1019 (9th Cir. 2009). Under California law, the definition of security is provided in California Corporations Code § 25019, which includes in the definition of "security" an "investment contract." *See Moreland v. Dep't of Corps.*, 194 Cal.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 19-2499 PSG (KKx) | Date | July 9, 2020 |
|---|---|---|---|
| Title | James D. McCool v. Denise Wilson et al. | | |

App. 3d 506, 511 (1987); *see also Consol. Mgmt. Grp., LLC v. Dep't of Corps.*, 162 Cal. App. 4th 598, 609 (2008). The relevant inquiry is whether Plaintiff's purchase of common units of Desert Jet Holdings, LLC constitute a security as an "investment contract."

"[T]he determination of whether a particular instrument constitutes a security must be made on an ad hoc basis upon a review of the surrounding facts and circumstances and in light of the regulatory purposes to be served under the Corporate Securities Law." *Leyva v. Super. Ct.*, 164 Cal. App. 3d 462, 470 (1985). Although determining if a financial transaction constitutes a security can involve factual analysis, "if the transactions pleaded in plaintiff's complaint do not constitute 'securities,' then dismissal for failure to state a claim upon which relief can be granted is proper." *Amfac Mortg. Corp. v. Arizona Mall of Tempe, Inc.*, 583 F.2d 426, 430 (9th Cir. 1978); *see also Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1132 (9th Cir. 2013).

In determining whether a transaction is an investment contract, and therefore a security, California courts apply either of two tests, (1) the "risk capital" test described in *Silver Hills Country Club v. Sobieski*, 55 Cal. 2d 811, 815 (1961)[2]; and (2) the "federal test" set forth in *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298–99 (1946) (*Howey*). *Reiswig v. Dep't of Corps. for State of Cal.*, 144 Cal. App. 4th 327, 334 (2006). A transaction is a security if it satisfies either test. *Id.* The parties agree that the applicable test is the *Howey* test. *See generally Mot.*; *Opp.*

Under the *Howey* test, an investment contract "means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party, it being immaterial whether the shares in the enterprise are evidenced by formal certificates or by nominal interests in the physical assets employed in the enterprise." *Howey*, 328 U.S. at 298–299. The three elements of the *Howey* test are: "(1) an investment of money, (2) in a common enterprise, (3) with an expectation of profits produced by the efforts of others." *Hocking v. Dubois*, 885 F.2d 1449, 1455 (9th Cir. 1989). The Ninth Circuit has "dropped the term 'solely'" from the third element, and instead requires that "the efforts made by those other than the investor are the undeniably significant

---

[2] A limited partnership interest qualifies as a "security" under the risk-capital test only if it involves "[1] an attempt by an issuer to raise funds for a business venture or enterprise; [2] an indiscriminate offering to the public at large where the persons solicited are selected at random; [3] a passive position on the part of the investor; and [4] the conduct of the enterprise by the issuer with other people's money." *Siry Inv., L.P. v. Farkhondehpour*, 45 Cal. App. 5th 1098, 1142–43 (2020) (quoting *Silver Hills*, 55 Cal. 2d at 815).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 19-2499 PSG (KKx) | Date | July 9, 2020 |
|---|---|---|---|
| Title | James D. McCool v. Denise Wilson et al. | | |

ones, those essential managerial efforts which affect the failure or success of the enterprise." *Id.*

Here, the inquiry revolves around the third "control" element. The third element hinges on an investor's "practical as well as legal ability to control" his investment. *Hocking*, 885 F.2d at 1460. In *Hocking*, the Ninth Circuit adopted the Fifth Circuit's approach to analyzing investor control in the context of general partnerships and joint ventures, requiring the investor to establish either: (1) an agreement that leaves so little power in the hands of the partner or venturer that the arrangement in fact distributes power as would a limited partnership; (2) an inability on the part of the investor, due to lack of knowledge or experience in business affairs, to intelligently exercise his legal powers; or (3) a dependence on some unique entrepreneurial or managerial ability of the manager such that the manager cannot be replaced. *Id.* The test "simply requires that we examine the economic reality of the investor's relation with the manager or promoter." *Id.* "In determining whether the investors relied on the efforts of others, we look not only to the partnership agreement itself, but also to other documents structuring the investment, to promotional materials, to oral representations made by the promoters at the time of the investment, and to the practical possibility of the investors exercising the powers they possessed pursuant to the partnership agreements." *Koch v. Hankins*, 928 F.2d 1471, 1478 (9th Cir. 1991) (citing *Hocking*, 885 F.2d at 1457). The court in *Consolidated Management Group* further explained:

> "The pivotal criterion for distinguishing partnership or joint venture interests, as well as limited liability company membership interests, that are securities from those that are not usually will be the profits solely [or substantially] from the efforts of others element in the *Howey* test. Where profits are to come substantially from the efforts of others (the typical case in limited partnership), a security will be present. On the other hand, where profits are to come from the joint efforts of partners (the typical case in a general partnership), a security usually will not be present."

*Consol. Mgmt. Grp.*, 162 Cal. App. 4th at 609 (internal citations and quotation marks omitted).

For instance, the court in *Securities & Exchange Commission v. Glenn W. Turner Enterprises, Inc.* determined that a pyramid scheme, where the investors contributed some effort, still constituted an "investment contract" where the "essential" effort came from the defendant company. 474 F.2d 476, 483 (9th Cir. 1973). There, investors purchased the opportunity to help sell self-motivation and sales-ability courses to others by bringing prospects to meetings where the company would make a sales pitch, and if a sale was made the investor received part of the purchase price as his commission. *Id.* at 478. The court reasoned that the investor's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 19-2499 PSG (KKx) | Date | July 9, 2020 |
|---|---|---|---|
| Title | James D. McCool v. Denise Wilson et al. | | |

contribution was "his money, his efforts to find prospects and bring them to the meetings, and whatever it costs him to create an illusion of his own affluence," while the company contributed the critical "selling efforts." *Id.* at 482. Those selling efforts were the "sine qua non of the scheme," in essence, it is "the right to share in the proceeds of [the company's selling efforts] that [the investor] buys." *Id.* In contrast, in *Iguacu, Inc. v. Filho*, the Ninth Circuit concluded that the investor's active management meant the transactions were not securities. 637 F. App'x 407 (9th Cir. 2016). There, the transactions in question involved the investors' purchase of membership interests in the Brazilian equivalent of an LLC, which, the court concluded, resulted in joint ventures in which "all members were actively engaged in management." *Id.* The "economic reality of the transactions was the investment in limitadas with full expectation of shared management and operation thereof." *Id.* The record indicated that the plaintiff "was not attempting to find mere buyers of shares . . . but to introduce investors who could serve as active partners: partners who at the very least would be obligated to arrange marketing of the venture's product." *Id.* The court explained that "[t]he securities laws were not intended to apply to those transactions." *Id.*

Here, the transactional documents and complaint indicate that Plaintiff was to take an active management role, it was not true that "the efforts made by those other than the investor [would be] the undeniably significant ones." *See Turner*, 474 F.2d at 482–83. First, Plaintiff was to receive from his investment a salary of $2 million in management fees over ten years, in exchange for providing to the LLC "general executive and management" services, financial assistance and advisory services, marketing functions, and human resources functions (including searching and hiring executives). *See Management Services Agreement* ¶¶ 2–3. Second, the complaint alleges that Plaintiff had "active financial expertise" that he would bring to the company. *See Compl.* ¶¶ 8, 37. Third, the LLC Agreement appointed Plaintiff and Wilson as the sole two managers of the LLC, entirely comprising its Management Board, and expressly stated that "[t]he business and affairs of the Company will be managed by its Managers." *See LLC Agreement* at 2 §§ 2.1–2.5. The Management Board would "function in substantially the same manner as a board of directors of a Delaware corporation," and approval of the Management Board is required for the LLC to take actions it would be required to take if it were a corporation. *See id*. As Plaintiff's complaint alleges, "[d]espite the slight disparity in their ownership interests, the [Management Services Agreement] splits corporate governance responsibilities equally between Denise [Wilson] and Jim [McCool]." *See Compl.* ¶ 44. The transactional documents do not suggest that Plaintiff intended to passively invest, rather, the documents indicate that Plaintiff intended to take an active management role and that the transaction was more akin to a joint venture. *See, e.g.*, *Nelson v. Stahl*, 173 F. Supp. 2d 153, 165 (S.D.N.Y. 2001) (finding LLC interest was not a security, reasoning "[b]ecause the LLC

Case 5:19-cv-02499-PSG-KK  Document 93  Filed 07/09/20  Page 10 of 14  Page ID #:1683

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 19-2499 PSG (KKx) | Date | July 9, 2020 |
|---|---|---|---|
| Title | James D. McCool v. Denise Wilson et al. | | |

agreements grant their members direct authority over management of the entities, their structure precludes satisfaction of the third element of the *Howey* test").

Turning to the *Hocking* factors, as to the first factor, Plaintiff has not demonstrated that the Agreements deprived him of legal control over his investment. As discussed, Plaintiff was made one of two managers of the LLC with shared managerial control. *See LLC Agreement* at 2 §§ 2.1–2.5. The powers granted to Plaintiff do not leave him "with so little power as to place [him] in a position analogous to a limited partner." *Koch*, 928 F.2d at 1479 (citing *Hocking*, 885 F.2d at 1461) (investors did not meet first factor where the partnership agreements required that "decisions regarding the management and control of the business must be made by a majority vote"); *cf. Burnett v. Rowzee*, 2007 WL 2809769 (C.D. Cal. Sept. 26, 2007) (investors met first factor where they signed an LLC agreement that delegated "full authority, power, and discretion to manage and control the business, affairs, and properties of the Company"). In opposition, Plaintiff argues that the Management Services Agreement does not characterize his role as a partner in a partnership or a joint venturer, indicating that his control is limited. *See Opp.* 15; *Management Services Agreement* ¶ 7. But this argument ignores the fact that in deciding whether the test is met, "form should be disregarded for substance," and the Court must examine the "economic reality." *Hocking*, 885 F.2d at 1457, 1461. Finally, Plaintiff argues that a provision in the LLC Agreement states that Wilson "shall owe to the Members duties of loyalty and due care of the type owed by directors;" while Plaintiff will not "have any fiduciary or other duty to the Company." *See LLC Agreement* ¶ 2.7(a)–(b). But this section describes the fiduciary duties owed to the company, it does not address issue of division of control between Plaintiff and Wilson. Plaintiff has not established this factor is met.

As to the second factor, Plaintiff does not allege that he lacked sophistication and expertise, and instead pleads that he offered "active financial expertise" to the LLC. *See Compl.* ¶¶ 8, 37; *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992) ("The proper inquiry is whether the partners are inexperienced or unknowledgeable "in business affairs" generally, not whether they are experienced and sophisticated in the particular industry or area in which the partnership engages and they have invested."). Plaintiff has not established this factor is met.

As to the third factor, Plaintiff does not sufficiently plead that he had a dependence on Wilson's unique entrepreneurial or managerial ability that cannot be replaced. Plaintiff argues that Wilson represented to him that she had abilities in the aviation industry, and Plaintiff was dependent on her abilities. *See Opp.* 17:9–18:15 (citing *Compl.* ¶¶ 26–29). However, the paragraphs of the complaint that Plaintiff cites in support merely allege that Wilson represented that she and the company had received recognition, such as awards. *See, e.g., Compl.* ¶ 29. But

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 19-2499 PSG (KKx) | Date | July 9, 2020 |
|---|---|---|---|
| Title | James D. McCool v. Denise Wilson et al. | | |

Plaintiff does not allege that he was *dependent* on Wilson's qualities and that she could not be replaced, and in fact Plaintiff was provided with substantial managerial control. *See generally id.* Plaintiff also argues that he "limited his contribution to his money and general financial expertise," out of deference to Wilson's expertise, but the complaint does not allege he set out to limit his involvement, and in fact the Management Services Agreement sets forth a *non-exhaustive* list of managerial and strategic corporate services Plaintiff would perform. *See Opp.* 16:1–12; *Compl.* ¶¶ 8, 37; *Management Services Agreement* ¶ 2. Plaintiff has not established this factor is met.

In sum, considering the pleaded facts and transactional documents, the Court concludes that the third *Howey* element is not met. It is clear that Plaintiff's investment was "not the kind of passive investment that characterizes securities." *Iguacu*, 637 F. App'x at 407. Plaintiff does not allege that he would legally or practically lack control over the LLC's success, but rather he would be an "active manager," with a hands-on role in running the LLC in partnership with Wilson. *See Turner*, 474 F.2d at 483; *Iguacu*, 637 F. App'x at 407–08 (noting "investments resulting in active management are not to be considered securities").

The Court concludes that Plaintiff has failed to allege a security. Accordingly, the Court **GRANTS** Defendants' motion to dismiss the fifth and seventh causes of action. Although this resolves Defendants' motion, the Court briefly addresses Defendants' argument that Plaintiff has failed to meet the pleading requirements.

B.  Pleading Requirements of Rule 9(b) and the PSLRA

Plaintiff's fifth cause of action alleges violations of Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b–5. *See Compl.* ¶¶ 154–63. To bring a claim for securities fraud under this rule, a plaintiff must prove: (1) falsity, meaning a material misrepresentation or omission by the defendant; (2) scienter, i.e., a wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005); *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008) (citing *In re Daou Sys. Inc.*, 411 F.3d 1006, 1014 (9th Cir. 2005)); *In re Atossa Genetics Inc Sec. Litig.*, 868 F.3d 784, 793 (9th Cir. 2017). Because Plaintiff alleges violations of Section 10(b) and Rule 10b-5, their complaint must satisfy the dual pleading requirements of Rule 9(b) and the PSLRA. *In re Atossa Genetics Inc Sec. Litig.*, 868 F.3d at 793.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 19-2499 PSG (KKx) | Date | July 9, 2020 |
|---|---|---|---|
| Title | James D. McCool v. Denise Wilson et al. | | |

  An omission is misleading if it "affirmatively create[s] an impression of a state of affairs that differs in a material way from one that actually exists." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) ("[I]n order to survive a motion to dismiss under the heightened pleading standards of the [PSLRA], the plaintiffs' complaint must specify the reason or reasons why the statements made by THC were misleading or untrue, not simply why the statements were incomplete."); *see also Reese v. Malone*, 747 F.3d 557, 569–70 (9th Cir. 2014). Once a party chooses to speak on a subject, they must disclose facts necessary to make the statements "not misleading" in light of the circumstances under which they were made. *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 43 (2011).

  The parties dispute whether the complaint adequately alleges an affirmative misrepresentation or alleged omission by the Allen Matkins Defendants. *See Mot.* 23–28; *Opp.* 21:4–22:14; *Compl.* ¶¶ 7–8. The Court addresses the alleged statements or omissions in turn.

  First, as to the complaint's allegation that the Allen Matkins Defendants inflated financial statements, the complaint does not allege with specificity what was misleading or false about specific financial statements. *See, e.g.*, *Compl.* ¶¶ 7, 104, 106, 148; *Odom*, 486 F.3d at 553 (the pleader must state the time, place, and specific content of the false representations to plead fraud). Second Plaintiff alleges that *Wilson* misrepresented, in the Contribution Agreement and to Plaintiff, that she owned the Desert Jet Entities (while her husband in fact retained ownership interests), that Wilson "repeatedly represented" her ownership, and although her husband's interests were originally accounted for in the Contribution Agreement's earlier drafts, she "instructed [Plaintiff] and his counsel" to remove them from the Contribution Agreement. *See Compl.* ¶¶ 51–60. But the complaint does not allege with specificity any statements made *by the Allen Matkins Defendants* as to this misrepresentation or omission. *See id.* ¶¶ 51–60, 116 ("Allen Matkins, Mr. Libenson . . . knew and did not report that the representations in the Contribution Agreement were false[.]").

  Third, Plaintiff alleges that the non-disclosure of the *Kramer* litigation constitutes an actionable omission. The complaint alleges that the Contribution Agreement represented that the Desert Jet Entities have "no liabilities, obligations, or commitments of any nature whatsoever except those listed in the Balance Sheet," and that Plaintiff learned that there were significant liabilities at the time the Contribution Agreement was executed, including the *Kramer* litigation. *See id.* ¶¶ 66–67, 70. The complaint alleges that the Allen Matkins Defendants "had direct knowledge of at least one undisclosed liability during their representation of Denise and the Desert Jet Entities in the negotiation and execution of the Contribution Agreement. Allen Matkins not only knew that the Desert Jet Entities were sued in the *Kramer* Litigation, Allen

Case 5:19-cv-02499-PSG–KK Document 93 Filed 07/09/20 Page 13 of 14 Page ID #:1686

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 19-2499 PSG (KKx) | Date | July 9, 2020 |
|---|---|---|---|
| Title | James D. McCool v. Denise Wilson et al. | | |

Matkins represented them in early 2018. Despite this involvement, Allen Matkins and Mr. Libenson omitted this liability." *See Opp.* 23; *Compl.* ¶¶ 70, 186. The complaint alleges that the Allen Matkins Defendants failed to disclose this liability to Plaintiff. *See Compl.* ¶ 72. However, again, the complaint does not allege with specificity the time, place, and specific content of the Allen Matkins Defendants' alleged omission or misrepresentation. The generalized allegation that "Denise's attorney, Mr. Libenson of Allen Matkins, disseminated these materially false and misleading statements," is not sufficiently specific. *See id.* ¶ 159; *Vantive*, 283 F.3d at 1084–85 (plaintiff must "specify each statement alleged to have been misleading"); *Swartz*, 476 F.3d at 764 ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together."). To the extent that Plaintiff alleges a "scheme," he has not pled it with sufficient particularity. *See id*.

Accordingly, the Court concludes that Plaintiff has not adequately satisfied the pleading requirements to allege its claim against the Allen Matkins Defendants here. This is another basis for dismissal. The Court does not reach Defendants' remaining arguments.

IV. <u>Leave to Amend</u>

Whether to grant leave to amend rests in the sound discretion of the trial court. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). Courts consider whether leave to amend would cause undue delay or prejudice to the opposing party, and whether granting leave to amend would be futile. *See Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996). Generally, dismissal without leave to amend is improper "unless it is clear that the complaint could not be saved by any amendment." *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

The Court has concluded that Plaintiff's claims are not adequately pleaded. However, at this early stage, the Court cannot conclude that any amendment would be futile. Accordingly, the Court **GRANTS** Plaintiff leave to amend.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 19-2499 PSG (KKx) | Date | July 9, 2020 |
|---|---|---|---|
| Title | James D. McCool v. Denise Wilson et al. | | |

V.  Conclusion

For the foregoing reasons, the Court **GRANTS** the Allen Matkins Defendants' motion to dismiss the fifth and seventh causes of action against them. The Court **GRANTS** Plaintiff leave to amend. Any amended complaint must be filed by **July 31, 2020**, or the dismissed claims will be dismissed with prejudice.

**IT IS SO ORDERED**.