1  TUCKER ELLIS LLP
   EDWARD W. RACEK SBN 235184
2  edward.racek@tuckerellis.com
   515 South Flower Street
3  Forty-Second Floor
   Los Angeles, CA 90071
4  Telephone:  213.430.3400
   Facsimile:   213.430.3409
5
   TUCKER ELLIS LLP
6  JOHN Q. LEWIS (admitted *pro hac vice*)
   john.lewis@tuckerellis.com
7  SAVANNAH M. FOX (admitted *pro hac vice*)
   savannah.fox@tuckerellis.com
8  950 Main Avenue, Suite 1100
   Cleveland, OH 44113
9  Telephone:  216.592.5000
   Facsimile:   216.592.5009
10

11 Attorneys for Plaintiffs
   James D. McCool, Desert Jet Holdings
12 LLC, Desert Jet, LLC, Desert Jet
   Maintenance LLC, Desert Jet Charter
13 LLC, Desert Jet TRM LLC, and
   Desert Jet Center LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES D. MCCOOL; DESERT JET HOLDINGS LLC; DESERT JET, LLC; DESERT JET MAINTENANCE LLC; DESERT JET CHARTER LLC; DESERT JET TRM LLC; and DESERT JET CENTER LLC,<br><br>      Plaintiffs,<br><br>      v.<br><br>ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS, LLP; CLARK LIBENSON; and DOES 1 through 10, inclusive,<br><br>      Defendants. | Case No. 5:19-cv-02499-PSG-KK<br>Assigned to Hon. Philip S. Gutierrez<br><br>**AMENDED COMPLAINT FOR:**<br><br>   **1) VIOLATION OF RULE 10B-5**<br>   **2) VIOLATION OF CAL. CORP. CODE § 25504.1**<br>   **3) FRAUD**<br>   **4) LEGAL MALPRACTICE**<br><br>**JURY TRIAL DEMANDED** |

1
AMENDED COMPLAINT

Plaintiffs James D. McCool ("McCool"), Desert Jet Holdings LLC ("Desert Jet"), Desert Jet, LLC, Desert Jet Maintenance LLC, Desert Jet Charter LLC, Desert Jet TRM LLC, and Desert Jet Center LLC (collectively the "Desert Jet Entities") bring this Amended Complaint against Defendants Allen Matkins Leck Gamble Mallory & Natsis, LLP ("Allen Matkins") and Clark Libenson ("Mr. Libenson") and allege as follows:

## INTRODUCTION

1. This case is about a law firm's improper representation, legal malpractice, and involvement in a fraudulent scheme designed to entice a multi-million dollar investment from Plaintiff McCool. McCool has resolved claims against all other parties (*see* Dkt. # 83, 86) and, through this Amended Complaint, McCool and the Desert Jet Entities seek to vindicate their rights against the Allen Matkins Defendants under California and federal law.

2. Denise Wilson owned several limited liability companies, known as the Desert Jet Entities, that together provided aviation management services to the private sector. The law firm of Allen Matkins and its attorney Clark Libenson, represented the Desert Jet Entities, relying on Wilson as their client contact.

3. Sometime during the Spring of 2018, McCool landed his private jet at the Palm Springs airport where Desert Jet provided him with routine service. McCool was impressed with the service he received and, over time, formed a relationship with Wilson. When he learned that her company was in need of cash to expand its business, McCool decided to invest.

4. The Allen Matkins Defendants were responsible for negotiating, approving, and co-drafting the underlying investment transaction documents for Wilson, and they did so by intentionally concealing the financial health, ownership interests and liabilities of those aviation management companies in the very documents they drafted, edited and approved. When they did so, the Allen Matkins Defendants subjected themselves to liability under 10(b) of the Securities Exchange Act and SEC Rule 10b-5, California

2
AMENDED COMPLAINT

1 Corporation Code § 25504.1, and California law.

2     5. When McCool began uncovering the fraudulent scheme spearheaded by the Allen Matkins Defendants in the Fall of 2019, Allen Matkins committed legal malpractice by outlining a legal strategy for Wilson to leave the company, which included, but is not limited to, assisting Wilson and her new litigation counsel with strategy adverse to Allen Matkins' very own clients, the Desert Jet Entities, for whom it had billed hundreds of thousands of dollars in legal services through that time.

## JURISDICTION AND VENUE

    6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that the matter in controversy involves federal questions under § 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder by the SEC. 15 U.S.C. § 78j(b), 17 C.F.R. § 240.10b-5.

    7. This Court has supplemental jurisdiction over the other claims asserted herein, pursuant to 28 U.S.C. § 1367.

    8. Plaintiffs contend that venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the securities that are the subject of this lawsuit, and the alleged omissions of material fact, as well as the false and misleading statements, were made in or issued from this District. In addition, upon information and belief, at least one Defendant is a resident in this District.

## PARTIES

    9. Plaintiff James D. McCool is, and at all relevant times was, an individual who resides in the State of Ohio.

    10. Plaintiffs Desert Jet Holdings, LLC and the Desert Jet Entities are, and at all relevant times were, California limited liability companies with principal places of business in Thermal, California.

    11. Defendant Allen Matkins Leck Gamble Mallory & Natsis ("Allen Matkins") is, and at all relevant times was, a California limited liability partnership with its principal

3
AMENDED COMPLAINT

place of business in Los Angeles, California.

12. Defendant Clark Libenson is, and at all relevant times was, an individual who resides in the State of California.

13. Plaintiffs are ignorant of the true names and capacities of the Defendants sued in this action as John Does 1 to 10 inclusive, and for that reason has sued them by their fictitious names. Upon information and belief, Plaintiffs allege that each of these fictitiously named Defendants are responsible in some manner, either individually or in conspiracy with other defendants or aiding and abetting them, for some or all of the acts alleged, and that Plaintiffs' damages as alleged were legally caused by such Defendants.

## FACTUAL BACKGROUND

### A. McCool's Investment in Desert Jet Holdings, LLC

14. In 2007, Denise Wilson founded Desert Jet, an aircraft management company that rapidly expanded over the following years to include charter and maintenance operations. By 2018, Wilson owned and operated five California limited liability companies that provided private aviation services: Desert Jet, LLC; Desert Jet Maintenance LLC; Desert Jet Charter LLC; Desert Jet TRM LLC; and Desert Jet Center LLC (collectively, the "Desert Jet Entities").

15. In the Spring of 2018, McCool landed his private jet at the Palm Springs airport where Wilson's company provided aviation management services through companies known as Fixed-Based Operators. McCool, satisfied with the service he received, met with Wilson to discuss the Desert Jet business. Wilson told McCool that Desert Jet rented space from another Fixed-Base Operator, and that the company had potential to grow upon the completion of a state-of-an-art hangar of its own.

### B. The Negotiations

16. In order for McCool to invest in the entire Desert Jet business, McCool and Wilson agreed to form Desert Jet Holdings, LLC ("Desert Jet" or the "Company"), to serve as a parent-holding company for the Desert Jet Entities. On August 14, 2018,

4
AMENDED COMPLAINT

McCool and Wilson signed a Contribution and Subscription Agreement under which Wilson contributed her alleged 100 percent equity interests in the Desert Jet Entities to Desert Jet Holdings, and McCool contributed $6 million in cash. In return of his $6 million investment, McCool received 49 of 100 Company Common Units in Desert Jet Holdings. Wilson received the remaining 51 Units plus a $500,000 dividend, which was paid at closing from McCool's $6 million investment.

17. Defendants Allen Matkins and Libenson acted as legal counsel for Wilson and the Desert Jet Entities and negotiated, approved, and co-drafted all of the key transaction documents. In all, McCool's actual investment in Desert Jet was comprised of two separate agreements, each entered into as of August 14, 2018 as part of a single transaction:

(1) Contribution and Subscription Agreement between Plaintiff, Wilson, and Desert Jet Holdings (the "Contribution and Subscription Agreement") (Doc. 1-1 (Ex. A to Complaint)); and

(2) Limited Liability Company Agreement for Desert Jet Holdings, LLC, executed by McCool and Wilson (the "LLC Agreement") (Doc. 1-3 (Ex. C to Complaint)).

18. Because of the way the investment was structured, McCool purchased securities (49% passive ownership interest) from Desert Jet Holdings and Wilson with his contribution to Desert Jet Holdings, and McCool and Desert Jet Holdings sold securities (51% managing ownership interest) to Wilson through the Contribution and Subscription Agreement in exchange for Wilson's contribution of the other Desert Jet Entities to Desert Jet Holdings. Because McCool, Wilson, and the Desert Jet Entities were each parties to the Agreement, privity existed between all of them.

19. The ownership interest sold and purchased, as described above, were securities as defined by the Securities Act and the Securities Exchange Act of 1934. Moreover, McCool invested money ($6 million) in a common enterprise (Wilson's

5
AMENDED COMPLAINT

Desert Jet Entities and Desert Jet Holdings) and was led to expect profits solely from the efforts of Desert Jet Holdings and its wholly owned subsidiaries, which included dozens of employees and multiple business units.

20. McCool, then-retired from his career at a financial services company, flew private jets as a hobby. Since he lacked the unique experience required to manage the Desert Jet Entities, he and Wilson agreed that she would control daily operations and key business decisions as CEO.

21. Section 2.7 of the LLC Agreement, states that Wilson owes the Company the duties of loyalty and due care, as expected for an active entrepreneur and manager of a business. Section 2.7(b), however, states that McCool does not owe any fiduciary or other duty to the Company and that "the duties of [McCool] to the Company and its Members will not be those of a director to a corporation and its stockholders or those of a partner to a partnership and its partners."

22. Under the terms of the LLC Agreement, McCool and Wilson were appointed as the managers of the LLC, and comprised its Management Board. *See* LLC Agreement at 2–3 §§ 2.1–2.6. McCool was to be the "Investor Manager," and Wilson the "Employee Manager." *See* at § 2.3.

**C. Allen Matkins Defendants' Participation in the Fraudulent Scheme**

23. In the months following his investment in Desert Jet Holdings, McCool learned that aspects of the Desert Jet business were not as represented to him and his counsel, both before the parties executed the Contribution Agreement and within the four corners of the Contribution Agreement itself. Had McCool known the truth about Desert Jet, he would have called into question the terms of his investment, if not the decision to invest at all.

24. The above Agreements were a product of negotiations between the parties and their counsel through August 2018.

25. Specifically, the Allen Matkins Defendants sent or received drafts of the

above Agreements to or from McCool's counsel on at least the following dates: August 2, 2019, August 6, 2018, August 9, 2018, and August 14, 2018. On each of those dates, the Allen Matkins Defendants, on Wilson's behalf, knowingly and intentionally misrepresented and omitted material facts about the Desert Jet Entities to inflate their value, to secure McCool's investment, and to assist Wilson in obtaining securities in Desert Jet Holdings. Specifically, the Allen Matkins Defendants, on Wilson's behalf, negotiated and eventually represented through the above communications that all liabilities of the Desert Jet Entities were contained on the financial statements of the Desert Jet Entities provided to McCool, when in fact the Allen Matkins Defendants themselves knew that such a representation was false and misleading on each of the dates of the above communications. *See* Contribution Agreement at § 3.10.

26. First, the Allen Matkins Defendants intentionally and falsely represented to McCool and his counsel that Wilson was the 100 percent owner of the Desert Jet Entities. In fact, Wilson's husband, Alan Robert Wilson, maintained an ownership in at least one of the Desert Jet Entities.

27. On August 6, 2018, Libenson emailed revisions to the Agreements to McCool's legal counsel. The Contribution and Subscription Agreement attached to this email clearly contemplates that Alan Wilson owned interests in the Desert Jet Entities.

28. On August 9, 2018, McCool's legal counsel emailed Libenson stating, in part, "[w]e learned this evening that Alan will have no interest in the DJ entities prior to the contribution, and therefore will not be a member in DJ Holdings. As such, the majority of our changes were implemented to reflect this change (i.e., remove all references to Rollover Members, etc.)."

29. On August 14, 2018, the Allen Matkin Defendants participated in the closing of the transaction and reiterated their misrepresentations to Desert Jet and McCool.

30. Despite making this representation to Libenson and sharing revisions to the Agreements that reflected the same, Libenson failed to disclose that Alan Wilson still

7
AMENDED COMPLAINT

maintained an ownership interest.

31.     As legal counsel to the Desert Jet Entities, Libenson knew who the owners of the Entities were and hid the truth from McCool in favor of expediting the transaction and furthering the scheme to defraud McCool.

32.     This misrepresentation has led to considerable expense, prevented Desert Jet Holdings from obtaining bank financing, and has further devalued the company. Moreover, it means that McCool received a diluted ownership interest through his investment.

33.     Second, the Allen Matkins Defendants, on Wilson's behalf, omitted at least six material liabilities at the time of McCool's investment. The various Desert Jet Entities face liability for (1) a sexual harassment lawsuit against Wilson's husband and the Entities, (2) a dispute over a commercial agreement by John Galt Industries, LLC, (3) outstanding loans, (4) approximately $200,000 in unpaid state and federal taxes, (5) reimbursement to Riverside County in the amount of $95,000 relating to the clean-up of an oil spill on Desert Jet property, and (6) a $250,000 bank loan distributed to Desert Jet Holdings on August 8, 2018 by Pacific Premier Bank for Wilson's own personal gain. All of these liabilities endanger the financial future of Desert Jet Holdings, and yet none were disclosed by Allen Matkins through its contributions and revisions to the various transaction documents described above.

34.     Most telling, the Allen Matkins Defendants not only knew that the Desert Jet Entities were sued in the sexual harassment lawsuit; Allen Matkins *represented them* in early 2018. Despite this involvement, Allen Matkins and Libenson purposely, knowingly, and intentionally misrepresented that all liabilities were contained on the financial statements of the Desert Jet Entities.

**D. The Allen Matkins Defendants' Conflict of Interest**

35.     The Allen Matkins' Defendants wrongdoing extended beyond fraudulent misrepresentations and omissions before and during McCool's investment. In addition,

the Allen Matkins Defendants committed legal malpractice on behalf of the Desert Jet entities.

36. The Allen Matkins Defendants represented the Desert Jet Entities, racking up hundreds of thousands of dollars in fees prior to the Fall of the 2019; and then in the Fall of 2019, the firm began representing Wilson in her individual capacity in matters adverse to the Desert Jet Entities. This conflicted representation included, but was not limited to, assisting Wilson and her new litigation counsel with strategy adverse to Allen Matkins' client, Desert Jet.

37. According to legal bills *sent to Desert Jet Center, LLC*, Allen Matkins represented Wilson in December 2019. A description of services includes the following:

   a. "Analysis of issues with respect to transfer of ownership interests in Desert Jet Holdings; telephone conferences in connection therewith." (0.8, 12/11/2019)

   b. "Analysis of issues with respect to transfer of ownership interests in Desert Jet Holdings; telephone conferences in connection therewith." (1.6, 12/12/2019)

   c. "Multiple telephone conferences with Denise Wilson and Jay Reid with respect to Desert Jet Holdings; review McCool email correspondence in connection therewith." (1.5, 12/14/2019)

   d. "Telephone conference with Denise Wilson with respect to Desert Jet Holdings." (0.4, 12/18/2019)

38. The Allen Matkins Defendants were not in fact representing the Desert Jet Entities but were instead representing Denise Wilson in a manner directly adverse to the Desert Jet Entities. It was during this time that Allen Matkins assisted and referred Wilson to new litigation counsel so that she could file claims against the very companies that Allen Matkins represented.

39. This is a clear conflict of interest that was not and could not be waived by

the Desert Jet Entities.

40. Nonetheless, Allen Matkins repeatedly acted in the best interests of Wilson, and not the Company. Particularly so when Libenson told Desert Jet Holdings that McCool needed to pay Wilson a dividend or else the company would be at stake.

41. This conduct by the Allen Matkins Defendants constituted legal malpractice, by falling below the standard of care, acting against a current and/or former client with an obvious conflict of interest, and using information gained during a relationship with a client later in an adverse relationship against that current and/or former client.

42. The legal malpractice by the Allen Matkins Defendants has caused the Desert Jet Entities significant damages.

## FIRST CAUSE OF ACTION

**Violation of § 10(b) of the Securities Exchange Act and Rule 10b-5**

**(McCool and Desert Jet Holdings, LLC v. The Allen Matkins Defendants)**

43. Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth below.

44. This claim is based upon § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b-5, promulgated thereunder.

45. On August 14, 2018, McCool purchased and Desert Jet Holdings, LLC sold securities to Wilson.

46. The investment constituted that sale of "securities" within the meaning of 15 U.S.C. § 77b(a)(1).

47. When McCool purchased the securities, it was intended that he would be a passive investor who relied on Wilson and the Desert Jet Entities to control daily operations and key business decisions. McCool lacked the specific experience required to run the aviation management companies. Wilson, however, maintained unique entrepreneurial and managerial ability in this highly-regulated industry.

48. At the time of the investment, McCool was dependent on Wilson's

experience and control, so much so that she could not be replaced.

49. McCool was reliant solely on the efforts of others, including all of the active employees of the Desert Jet Entities, for any profit to be made with his investment and, indeed, whether the Desert Jet Entities failed or succeeded. McCool did not fly the Company's charter jets, did not performance maintenance on customer aircraft or equipment, and otherwise did not participate in the day-to-day operations of the business

50. Wilson offered to sell, and sold, the security described above by means of the written Contribution Agreement, which was drafted and revised by the Allen Matkins Defendants to include false and omitted statements of material fact necessary to make the statements made, in light of the circumstances under which they were made, not misleading in that they misrepresented and concealed the true financial condition, ownership interests, and liabilities of the Desert Jet Entities.

51. The Allen Matkins Defendants, on Wilson's behalf, made materially false and misleading statements in violation of § 10(b) of the Securities Exchange Act and Rule 10b-5. The statements were materially false and misleading, and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

52. The Allen Matkins Defendants had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive McCool, or, in the alternative, acted with reckless disregard for the truth when she failed to disclose the true facts in the statements to McCool.

53. In addition, Allen Matkins and Libenson, disseminated these materially false and misleading statements with the intent to contribute to the fraudulent scheme, and he and his law firm are likewise primarily liable.

54. McCool and Desert Jet Holdings LLC relied on the statements set forth above in making the decision to purchase and sell the securities in Desert Jet Holdings.

55. Had McCool and Desert Jet Holdings LLC known of the materially adverse

information that was not disclosed by the Allen Matkins' Defendants, they would not have purchased or sold the securities, and they would not have sustained damages.

56. As a result of Defendants' false representations, McCool and Desert Jet Holdings LLC sustained a loss up to the total amount invested, and had the representations been true, McCool and Desert Jet would not have sustained this loss.

## SECOND CAUSE OF ACTION

### Violation of California Corp. Code § 25504.1

**(McCool and Desert Jet Holdings, LLC v. The Allen Matkins Defendants)**

57. Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth below.

58. The 49 Company Common Units in Desert Jet Holding that McCool purchased through his investment were "securities" within the meaning of § 25019 of California's Corporate Securities Law of 1968.

59. When McCool purchased and Desert Jet Holdings sold the securities, it was intended that McCool would be a passive investor who relied on Wilson and the Desert Jet Entities to control daily operations and key business decisions. McCool lacked the specific experience required to run the aviation management companies. Wilson, however, maintained unique entrepreneurial and managerial ability in this highly-regulated industry.

60. At the time of the investment, McCool was dependent on Wilson's experience and control, so much so that she could not be replaced.

61. McCool was reliant solely on the efforts of others, including all of the active employees of the Desert Jet entities, for any profit to be made with his investment and, indeed, whether the Desert Jet Entities failed or succeeded. McCool did not fly the Company's charter jets, did not perform maintenance on customer aircraft or equipment, and otherwise did not participate in the day-to-day operations of the business.

62. All of the Desert Jet Holdings securities were "offered for sale" in the State

12
AMENDED COMPLAINT

of California pursuant to California Corporations Code § 25008 because the issuers of such securities were located in California and/or the offers for such securities originated in California, specifically from Desert Jet's principal place of business in Thermal, California.

63. Under California Corporations Code § 25401, "[i]t is unlawful for any person to offer or sell a security in this state . . . by means of any written or oral communication which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading."

64. Wilson offered and sold directly to McCool and Desert Jet through numerous untrue statements of material facts as well as omissions of material facts in the Contribution Agreement executed by Plaintiffs and Wilson, in violation of California Code § 25401. Accordingly, privity exists between the buyer and seller of the securities.

65. Such misrepresented and omitted facts are "material" within the meaning of California Corporations Code § 25401 because they were facts a reasonable investor would consider in deciding whether to invest.

66. The Allen Matkins Defendants acted as legal counsel for Wilson and prepared material information about the Desert Jet Entities knowing of misrepresentations and omissions. In particular, Allen Matkins and Libenson were aware of the undisclosed liabilities, misleading financial statements, ownership interests, and other fraud perpetrated on McCool and Desert Jet Holdings, as more fully detailed above.

67. Allen Matkins had direct knowledge of at least one undisclosed liability during their representation of Wilson and the Desert Jet Entities in the negotiation and execution of the Contribution Agreement. Allen Matkins not only knew that the Desert Jet Entities were sued in the sexual harassment litigation, Allen Matkins *represented* them in early 2018. Despite this involvement, Allen Matkins and Libenson omitted this liability.

13
AMENDED COMPLAINT

68.     Allen Matkins and Libenson, are liable for misrepresentations and omissions made in connection with the Desert Jet Holdings securities under California Corporations Code § 25504.1 because they materially aided, with intent to deceive or defraud, in the acts or transactions constituting violations of § 25401.

69.     The aid that the above-mentioned Defendants provided to the perpetration of the fraudulent scheme was material, indeed essential: they helped organize the Desert Jet Holdings offering and concealed and/or made fraudulent misrepresentations on behalf of Wilson despite having full knowledge of the truth.

70.     Defendants' misconduct has caused McCool and Desert Jet Holdings to suffer financial losses from the purchase and sale of the securities. Under California Corporations Code § 25501, McCool and Desert Jet Holdings entitled to damages as set forth in the Code.

### THIRD CAUSE OF ACTION
### Fraud
### (McCool and Desert Jet Holdings, LLC v. The Allen Matkins Defendants)

71.     Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth below.

72.     As alleged above, The Allen Matkins Defendants made fraudulent misrepresentations and omitted to state material information with knowledge of the falsity of their statements and with the intent to defraud McCool and Desert Jet.

73.     The Allen Matkins Defendants intentionally misrepresented the financial status, liabilities, and ownership interests of the Desert Jet Entities with the intent to keep the investment deal alive and, most importantly, to keep billing the Desert Jet Entities for the Allen Matkins Defendants' own economic benefit.

74.     In addition to the above alleged misrepresentations and omissions, the Allen Matkins Defendants went so far as to hide the sexual harassment lawsuit (the *Kramer* litigation) against the Desert Jet Entities even though Allen Matkins was involved as

14
AMENDED COMPLAINT

legal counsel.

75. The Allen Matkins Defendants knowingly made the above described fraudulent misrepresentations and omissions knowing that McCool would be more likely to agree to the investment terms and continue the negotiations and investment to their own financial benefit, and Desert Jet would agree to continue with the sale.

76. The Allen Matkins Defendants knew that their fraudulent and material misrepresentations and omissions were not known to or reasonably discoverable by McCool or Desert Jet. Further, the Allen Matkins Defendants knew their affirmative misrepresentations were false when made.

77. McCool and Desert Jet justifiably relied on the Allen Matkins Defendants' misrepresentations and omissions when making their decisions on whether to engage in the transaction and to what extent and amount the investment would entail.

78. Had the omitted and concealed information been disclosed, McCool and Desert Jet would have been aware of it and behaved differently.

79. The foregoing affirmative misrepresentations, false promises, and concealment of material facts caused McCool and Desert Jet to suffer substantial harm, including loss of value hindrance of Desert Jet Holdings' ability to pay out dividends, impairment of Desert Jet's ability to obtain financing or continue operations, given its now-known liabilities.

80. Given the abundance of misrepresentations about the financial stability, ownership, and liabilities of the Desert Jet Entities, McCool and Desert Jet pray leave of court to amend this complaint to set forth the exact amount of such compensatory damages once the same are ascertained.

81. The Allen Matkins Defendants' conduct in perpetrating the above-mentioned misrepresentations was willful, malicious, and/or specifically calculated to cause injury to McCool and Desert Jet.  McCool is, therefore, in addition to compensatory damages, entitled to punitive damages to deter similar conduct.

## FOURTH CAUSE OF ACTION

### Legal Malpractice

### (The Desert Jet Entities v. The Allen Matkins Defendants)

82. Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth below.

83. Defendants Allen Matkins and Libenson owed a duty to Desert Jet to use such skill, prudence, and diligence as members of the profession commonly possess and exercise under similar circumstances. Further, as attorneys licensed to practice in the State of California, the Allen Matkins Defendants had a duty to comply with all ethical rules and regulations regarding professional conduct, inter alia, the provisions of Rule 1.7 of the Rules of Professional Conduct. Namely, but not limited to, not taking a position adverse to the interests of the Desert Jet Entities or using confidential information gained during a client relationship later adversely against that client.

84. Rule 1.7 of the State Bar of California's Rules of Professional Conduct provides that "A lawyer shall not, without informed consent from each client, and compliance with paragraph (d), represent a client if the representation is directly adverse to another client in the same or separate matter." Representation is permitted only if the lawyer complies and if "the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal."

85. As detailed above, Defendants Allen Matkins and Libenson breached this duty by representing Wilson in an individual capacity while at the same time billing its true client, the Desert Jet Entities, for these services, and directly adverse to a current and/or former client. In particular, the Defendants assisted and referred Wilson to new litigation counsel so that she could file claims against Desert Jet and advised Wilson on how to leave the Company. This is a clear conflict of interest that was not and could not be waived by the Desert Jet Entities.

86. In addition, the Allen Matkins Defendants utilized confidential and privileged information about the company's operations, agreements, financial status, and legal matters to assist Wilson to the Desert Jet Entities' detriment.

87. Such breach by Defendants Allen Matkins and Libenson proximately caused the Desert Jet Entities to incur legal expenses and opened it up to legal claims against it by Wilson. But for Defendants' negligent acts and omissions, Plaintiffs would not have incurred this harm.

88. As a direct and proximate result of the acts of the Allen Matkins Defendants as fully set forth herein, the Desert Jet Entities have been and will continue to be damaged. The amount of such damages incurred by the Desert Jet Entities shall be in accordance with proof at trial.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs pray for judgment as follows:

89. Damages, including punitive damages, in an amount to be proved at trial;

90. An award of prejudgment and post-judgment interest; and,

91. Costs, interest, and such other and further relief as the Court deems just and proper.

DATED: July 31, 2020                             TUCKER ELLIS LLP


By: */s/ John Q. Lewis*_____
    John Q. Lewis
    Attorneys for Plaintiffs

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury of all issues so triable.

DATED: July 31, 2020                             TUCKER ELLIS LLP


                                                 By: */s/ John Q. Lewis*_____
                                                      John Q. Lewis
                                                      Attorney for Plaintiffs

**CERTIFICATE OF SERVICE**

This Certificate of Service is made in compliance with Local Rule 5.1.2 and Civ.R. 5(b). I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 515 S. Flower Street, 42nd Floor, Los Angeles, CA 90071.

On the date indicated below, a true and correct copy of the foregoing **AMENDED COMPLAINT** was filed with Court and served electronically and will be available for viewing and downloading from the Court's CM/ECF system:

The Notice of Electronic Case Filing automatically generated by the system and sent to all parties entitled to service under the Federal Rules of Civil Procedure and the Local Rules of the Central District of California who have consented to electronic service shall constitute service of the filed document to all such parties.

Executed on, July 31, 2020, at Los Angeles, CA.

I declare under penalty of perjury that I am employed in the office of a member admitted to practice before the District Court for the Central District of California and ECF registered in this Court at whose direction the service was made and that the foregoing is true and correct.

By: /s/ *Annika Garcia*
Annika Garcia