UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  #133/152

| | | | |
|---|---|---|---|
| Case No. | EDCV 19-2499 PSG (KKx) | Date | July 23, 2021 |
| Title | James D. McCool v. Denise Wilson et al | | |

| | |
|---|---|
| Present: The Honorable | Philip S. Gutierrez, United States District Judge |

| Wendy Hernandez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers):**   **The Court GRANTS McCool's motion to enforce the settlement and GRANTS IN PART and DENIES IN PART Wilson's motion to enforce the settlement**

Before the Court are two motions to enforce the parties' settlement agreement: one filed by Defendant and Counter Plaintiff Denise Wilson ("Wilson"), s*ee generally* Dkt. # 133 ("*Mot. I*"), and the other filed by Plaintiff and Counter Defendant James D. McCool ("McCool"), *see generally* Dkt. # 152 ("*Mot. II*"). Both parties opposed, *see generally McCool's Opposition to Wilson's Motion*, Dkt. # 142 ("*Opp. I*"); *Wilson's Opposition to McCool's Motion*, ("*Opp. II*"), and replied, *see generally Wilson's Reply*, Dkt. # 144 ("*Reply I*"); *McCool's Reply*, Dkt. # 156 ("*Reply II*"). After considering the moving, opposing, and reply papers, the Court **GRANTS** McCool's motion and **GRANTS IN PART** and **DENIES IN PART** Wilson's motion.

I.   Background

This case involves a dispute between McCool and Wilson, who used to collectively own an aviation management company, Desert Jet Holdings, LLC ("Desert Jet").

McCool initiated this action in December 2019 against Wilson, her attorneys, and her accountants for their alleged misrepresentations and omissions regarding Desert Jet that purportedly led McCool to invest in the company. *See generally Complaint*, Dkt. # 1 ("*Compl.*"). McCool alleged fraud, breach of contract, securities violations, and related claims against Wilson. *See generally id.* Wilson brought twenty-one counterclaims against McCool and Desert Jet. *See generally* Dkt. # 31.

McCool's claims rested, in part, on Wilson's failure to disclose the company's participation in a lawsuit pending in the Riverside County Superior Court against Wilson,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 19-2499 PSG (KKx) | Date | July 23, 2021 |
|---|---|---|---|
| Title | James D. McCool v. Denise Wilson et al | | |

Wilson's husband Alan Robert Wilson ("Rob"), and Desert Jet (the "*Kramer* Litigation"). *Compl*. ¶¶ 70–71. The plaintiff in the *Kramer* litigation, a former personal housekeeper to the Wilsons, alleges that Rob sexually assaulted her. *Id.* ¶ 70. Desert Jet was paying to defend the *Kramer* litigation, including Wilson's and Rob's personal defense, pursuant to the company's indemnification obligations. *Id.*

After a full-day mediation, Wilson and Rob entered into a Global Confidential Settlement, Mutual Release, and Buyout Agreement with McCool and Desert Jet (the "Settlement Agreement") effective May 27, 2020. *Declaration of Denise Wilson*, Dkt. # 133-1 ("*Wilson Decl.*"), ¶ 2, Ex. 1 ("*Settlement Agreement*"). The parties filed a notice of settlement with the Court two days later.[1] *See generally* Dkt. # 83. Under the Settlement Agreement, McCool was to "buyout" Wilson in exchange for her control in Desert Jet. *Settlement Agreement* ¶1(a).

Wilson now claims that McCool and Desert Jet breached the Settlement Agreement by (1) failing to pay attorneys' fees and costs in the *Kramer* litigation, which caused Rob's counsel to withdraw from representation, (2) demanding that Wilson and Rob pay half the bill for Desert Jet's legal fees in the *Kramer* Litigation, (3) improperly filing taxes on behalf of Desert Jet without Wilson's review and consent, (4) failing to provide a draft of Desert Jet's tax returns for the year 2020 by April 1, 2021, (5) publicly filing pleadings in this action that "unambiguously disparaged, criticized, and harmed [Wilson]," and (6) failing to apprise Wilson of the efforts to remove her as a party to Desert Jet agreements, loans, and guarantees in a timely manner, and then defaulting on indebtedness to a third party who is now initiating collections against Wilson personally. *See Mot. I* 1:7–7:2.

On the other hand, McCool claims that Wilson violated the Settlement Agreement by refusing to pay the agreed share of expenses and costs related to the *Kramer* litigation. *See generally Mot. II*.

Wilson seeks (1) specific performance of the Settlement Agreement and (2) attorneys' fees and costs for bringing the instant motion under 28 U.S.C. § 1927. *See generally* Dkt. # 136. McCool seeks (1) $78,765.78 in attorneys' fees accrued in the *Kramer* litigation to date, (2) payment of any additional attorneys' fees and costs in the *Kramer* litigation within 90 days of invoicing, and (3) attorneys' fees and costs under 28 U.S.C. § 1927 for "submitting

---

[1] McCool also settled with Wilson's accountants. *See generally* Dkt. # 86. As such, the only remaining Defendants are Wilson's lawyers.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 19-2499 PSG (KKx) | Date | July 23, 2021 |
|---|---|---|---|
| Title | James D. McCool v. Denise Wilson et al | | |

demonstrably false and unsupported evidence and arguments." *See generally* Dkt. # 153-1; *Opp. I* 13:16–15:9.

## II. Legal Standard

A district court may retain jurisdiction to enforce a settlement agreement entered into by parties to an action after the action has been dismissed. *See Hagestad v. Tragesser*, 49 F.3d 1430, 1433 (9th Cir. 1955). A settlement agreement is treated as a contract and a party may file a motion to enforce a settlement agreement to obtain an order for damages or specific performance. *See TNT Mktg, Inc. v. Agresti*, 796 F.2d 276, 278 (9th Cir. 1986).

To be enforced, a settlement agreement must meet two requirements. *See Tiger Bay Vill. Corp. v. Yihe Corp.*, No. 13-8837 RSWL (FFMx), 2014 WL 3662259, at *3 (C.D. Cal. July 18, 2014). First, it must be a complete agreement. *See Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987). Second, both parties must have agreed to the terms of the settlement or authorized counsel to settle the dispute. *See Harrop v. W. Airlines, Inc.*, 550 F.3d 1143, 144–45 (9th Cir. 1977). In interpreting the agreement, a court must construe its language "literally and in a straightforward manner" and read it as it would a state-law contract. *See TNT Marketing*, 765 F.2d at 278.

## III. Discussion

The parties do not dispute that (1) the Court maintained jurisdiction over the lawsuit to enforce the Settlement Agreement in the event of a breach, *see Settlement Agreement* ¶ 1(b), (2) the Settlement Agreement is a complete agreement, and (3) both parties agreed to the Settlement Agreement's terms, *see generally Mot. I*; *Opp. I*. Instead, the parties dispute whether their actions constitute breaches of the Settlement Agreement. *See generally Mot. I; Opp. I; Mot. II; Opp. II*.

Enforcement of settlement agreements in federal diversity cases is governed by state contract law. *See Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1017–18 (9th Cir. 2012). Under California law, "[t]he elements of a cause of action for breach of contract are: (1) a contract; (2) plaintiff's performance; (3) defendant's breach[;] and (4) damage to plaintiff therefrom." *Chaganti v. I2 Phone Int'l, Inc.*, 635 F. Supp. 2d 1065, 1071 (N.D. Cal. 2007) *aff'd*, 313 Fed. App'x. 54 (9th Cir. 2009).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 19-2499 PSG (KKx) | Date | July 23, 2021 |
|---|---|---|---|
| Title | James D. McCool v. Denise Wilson et al | | |

This order proceeds as follows. First, the Court addresses Section 22 of the Settlement Agreement, which governs payment of attorneys' fees and costs in the *Kramer* litigation. Then, the Court turns to the other alleged breaches in Wilson's motion. Finally, the Court discusses whether to award attorneys' fees and costs.

    A.    The *Kramer* Litigation

Section 22 of the Settlement Agreement reads as follows:

22. <u>Cooperation as to Kramer Litigation</u>.   In addition to the acts recited in this Agreement, the Parties agree to cooperate, perform, or cause to be performed on the date of this Agreement, or thereafter, any and all such further acts as may be reasonably necessary as to the lawsuit pending in the Superior Court of California, County of Riverside, Case No. PSC1800390 ("Kramer Litigation"). Denise and Alan Robert Wilson will be permitted to retain new or additional counsel for their representation in the Kramer Litigation. Denise and Alan Robert Wilson agree to assume 50% of the costs of suit and attorneys' fees, as well as 50% of any liability/verdict or settlement amount, prospective from the Effective Date. Any failure by Company to pay costs of suit or attorney's fees incurred in the Kramer Litigation prior to and including on the Effective Date, or Company's failure to pay Company's 50% of the costs of suit and attorneys' fees, as well as 50% of any liability/verdict or settlement amount, as of and prospective from the Effective Date, shall be deemed a material breach of this Agreement. Each Party's payments contemplated under this paragraph shall be paid promptly, and all payments should be settled within 90 days of accrual.

There are two disputes regarding this section of the Settlement Agreement. First, the parties dispute whether McCool and Desert Jet breached Section 22 by failing to pay or delaying payment to Rob's and Wilson's separate counsel. *Mot. I* 3:3–5:21; *Opp. I* 6:3–17. Second, the parties dispute whether the Settlement Agreement requires Wilson and Rob to pay 50 percent of *their own* legal fees and costs in the *Kramer* litigation, or whether they are required to pay 50 percent of *all* legal fees and costs, including those of Desert Jet. *See generally Mot. II*; *Mot. I* 5:22–6:15. The Court addresses each argument in turn.

            i.    *Payments to Wilson's and Rob's Counsel*

Wilson argues that Desert Jet breached Section 22 by (1) failing to pay all of the costs of suit and attorneys' fees that she and Rob incurred prior to and including the effective date of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 19-2499 PSG (KKx) | Date | July 23, 2021 |
|---|---|---|---|
| Title | James D. McCool v. Denise Wilson et al | | |

Settlement Agreement—i.e., May 27, 2020—and (2) failing to pay 50 percent of Wilson's and Rob's costs of suit and attorneys' fees after May 27, 2020. *Mot. I* 4:1–10. She contends that, due to Desert Jet's failure to pay, Lewis Brisbois, Rob's counsel, formally withdrew from representation, and that Wilson's counsel has threatened the same. *Id*. According to Wilson, Rob was "harmed and prejudiced" by Lewis Brisbois's withdrawal because (1) Rob was left without legal representation while depositions proceeded in the litigation, (2) he was fined by the court for failing to appear at a hearing that he was not informed about, and (3) Rob's new legal counsel must spend time "getting acquainted and up to speed" with the case, meaning Rob will incur additional fees that would not have been necessary had Lewis Brisbois not withdrawn. *Id.* 4:14–21. Further, she claims that, as of February 2021, McCool and Desert Jet owe Rob's former counsel at least $5,338.50 that "accrued" on or before September 2, 2020 and was invoiced on October 16, 2020. *Wilson Decl*. ¶ 8.

McCool counters that Lewis Brisbois withdrew before Desert Jet owed fees under the Settlement Agreement and that, in any event, Desert Jet has now fully paid the firm. *Opp. I* 6:3–7. McCool also points out that Desert Jet attorneys helped Rob find replacement counsel. *Id.* 6:7–9. In reply, Wilson reiterates the arguments in her motion and adds that McCool and Desert Jet owed Lewis Brisbois over $60,000 on August 25, 2020. *Reply I* 2:28–3:26; *Declaration of Denise Wilson in Support of Reply*, Dkt. # 145 ("*Wilson Decl. II*"), ¶ 8.

Curiously, neither party attempts to define what "all payments should be settled within 90 days of accrual" means under the Settlement Agreement. First, the parties do not explicitly state whether fees "accrue" when they are invoiced, when the work is completed, or at some other time. Additionally, Wilson apparently believes that McCool and Desert Jet were under a strict obligation to pay all legal fees within 90 days, and that they were immediately in breach of the Settlement Agreement on May 27 if Desert Jet owed any legal fees that had "accrued" 90 days before May 27. *Reply I* 2:28–3:7. On the other hand, McCool and Desert Jet seem to believe that no fees could be overdue until 90 days after the effective date of the Settlement Agreement—i.e., 90 days after May 27. *Opp. 1* 6:5–7.

Regardless, even under Wilson's strict reading, Wilson has failed to prove a breach, or that a breach caused Rob's harm. Wilson states that Lewis Brisbois first alerted Rob of its intent to withdraw on June 3, 2020, but she fails to submit evidence that Desert Jet owed the firm for fees that had "accrued" more than 90 days before that date. Wilson also asserts that Desert Jet owed Lewis Brisbois $60,000 on August 25, 2020, but, critically, she does not state *when* the fees "accrued."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 19-2499 PSG (KKx) | Date | July 23, 2021 |
|---|---|---|---|
| Title | James D. McCool v. Denise Wilson et al | | |

Wilson also claims that, as of February 2021, McCool and Desert Jet owed Lewis Brisbois at least $5,338.50 in fees "that accrued on or before September 2, 2020 and that were invoiced on October 16, 2020." *Mot. I* 4:22–24. Although she does not explicitly make the argument, Wilson implies that this qualifies as a breach of the Settlement Agreement because Desert Jet did not pay the fees "within 90 days of accrual"—i.e. September 2. *Id.*

In response, McCool insists that if Desert Jet breached the agreement by failing to pay fees when due, it did so after Rob's counsel withdrew, and therefore any failure to timely pay fees could not have harmed Rob.[2] *Opp. I* 6:5–7. Further, while McCool does not clearly explain when fees "accrue" under the Settlement Agreement, he submits a December 17, 2020 email from his counsel to Wilson's counsel in which he implies that fees do not "accrue" until they are invoiced. *See Declaration of John Q. Lewis*, Dkt. # 142-1 ("*Lewis Decl.*"), ¶ 12; Dkt. # 142-6. As such, under McCool's interpretation, the contested $5,338.50 was not due until 90 days after the October 16 invoice—i.e. January 14, 2021. Because Lewis Brisbois withdrew on November 30, 2020, Desert Jet's delayed payment could not have caused the withdrawal.

In reply, Wilson failed to put forth her own definition of "accrue" or otherwise address McCool's argument. Arguments to which no response is supplied are deemed conceded. *See Tapia v. Wells Fargo Bank, N.A.*, No. CV 15-03922 DDP (AJWX), 2015 WL 4650066, at *2 (C.D. Cal. Aug. 4, 2015); *Silva v. U.S. Bancorp*, No. 5:10-cv-01854-JHN-PJWx, 2011 WL 7096576, at *3 (C.D. Cal. Oct. 6, 2011) (same).

Further, McCool states, and Wilson does not deny, that Desert Jet has now paid all outstanding invoices. *Opp. I* 6:3–4. Thus, the Court cannot grant Wilson's request for specific performance regarding delayed payments because Desert Jet has already paid.

As for Wilson's claims that Desert Jet owes money to her counsel, Glaser Weil, McCool explains that Desert Jet entered into an agreement with Glaser Weil to remain current and pay past due fees. *See Declaration of James D. McCool*, Dkt. # 142-10 ("*McCool Decl.*"), ¶ 6, Ex.

---

[2] Wilson explains Rob's harm as follows: "Rob was harmed and prejudiced as a result of Lewis Brisbrois withdrawing as his counsel in the *Kramer* Litigation as he was left without legal representation while depositions proceeded in the proceeded in the Kramer Litigation, Rob was also fined by the court in the Kramer Litigation for failing to appear at a court hearing that Rob was not informed about, and although Rob is in the process of retaining new counsel in the Kramer Litigation, Rob's new legal representation is now at a disadvantage by having to defend a case that is scheduled for trial within a few months." *Wilson Decl.* ¶ 9.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 19-2499 PSG (KKx) | Date | July 23, 2021 |
|---|---|---|---|
| Title | James D. McCool v. Denise Wilson et al | | |

5. He contends that this negotiated agreement constitutes compliance with Desert Jet's obligations under Section 22. *Opp. I* 6:10–15. Wilson failed to oppose this argument, and therefore she conceded it. *See Tapia*, 2015 WL 4650066, at *2.

Accordingly, Wilson has failed to show that Desert Jet and McCool breached Section 22 or that any breach caused harm, and the Court **DENIES** Wilson's motion on this ground.

       *ii.*      *50 Percent of Legal Fees and Costs*[3]

Much of Wilson's motion and the entirety of McCool's motion focus on the opposing parties' alleged breach of the "50% of the costs of suit and attorneys' fees" language in Section 22. *See generally Mot. I*; *Mot. II*. Wilson argues that "the Settlement Agreement is itself unambiguous and clear that [Wilson] and Rob were only to take on 50% of the costs of suit and attorneys' fees incurred for *their own* representation in the *Kramer* litigation after the Settlement Agreement's effective date." *Mot. I* 13:13–17 (emphasis added). McCool insists that "the Settlement Agreement . . . is clear" that Wilson and Rob agreed to assume 50 percent of *all* costs of suit and attorneys' fees. *Mot. II* 6:7–11.

Under California law, a contract is to be interpreted so as "to give effect to the mutual intention of the parties as it existed at the time of contracting." Cal. Civ. Code § 1636. The mutual intent of the parties is to be determined from the language of a contract, "if the language is clear and explicit, and does not involve an absurdity." *See id.* § 1638. "Parol evidence is properly admitted to construe a contract only when its language is ambiguous." *F.B.T. Prods., LLC v. Aftermath Recs.*, 621 F.3d 958, 963 (9th Cir. 2010).

A court first "provisionally receives any proffered extrinsic evidence that is relevant to prove a meaning to which the language of the instrument is reasonably susceptible." *Wolf v. Walt Disney Pictures & Television*, 162 Cal. App. 4th 1107, 1126, (2008). If, in light of the extrinsic evidence, the language is reasonably susceptible to the interpretation urged, the extrinsic evidence is then admitted to aid in interpreting the contract. *Wolf v. Sup. Ct.*, 114 Cal. App. 4th 1343, 1351 (2004). When there is no material conflict in the extrinsic evidence, or where no extrinsic evidence is submitted, the court interprets the contract as a matter of law. *Walt Disney*, 162 Cal. App. 4th at 1126. The court must settle the proper interpretation of a contract as a matter of law even when conflicting inferences can be drawn from undisputed

---

[3] The arguments in this section are repeated throughout the parties' motions, oppositions, and replies. For ease of analysis, the Court only cites to one docket entry each time.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 19-2499 PSG (KKx) | Date | July 23, 2021 |
|---|---|---|---|
| Title | James D. McCool v. Denise Wilson et al | | |

extrinsic evidence, or where that extrinsic evidence renders the contract language susceptible to more than one reasonable interpretation. *Id.* However, if there is a conflict in the extrinsic evidence, then the jury must resolve the factual conflict. *See City of Hope Nat. Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 395 (2008).

Both parties insist that the contract language, the structure of the contract, and the parties' course of dealing unambiguously supports their position. *Mot. I* 13:13–27; *Mot. II* 4:14–5:18. The Court finds that, considering the language, structure, and extrinsic evidence, both parties' interpretations are reasonable, and that therefore the Settlement Agreement is ambiguous.

        *a.*     *Language of the Settlement Agreement*

Wilson argues that the language of Section 22 supports her reading that the Settlement Agreement requires her to pay 50 percent of only her and her husband's fees and costs, not Desert Jet's. *Reply I* 4:17–5:9. She points out that the sentence that precedes the "50% of costs of suit" sentence states that Wilson and Rob "will be permitted to retain new or additional counsel for their representation in the Kramer litigation." *Id.*; *Settlement Agreement* ¶ 22. According to Wilson, this language "makes clear that 'the' costs of suit and attorneys' fees refer to the preceding sentence for [Wilson] and Rob's counsel." *Reply I* 4:26–27. She insists that her reading is "the necessary interpretation of the Agreement's unambiguous, plain language" and "it is the only logical interpretation." *Opp. II* 8:25–27.

McCool, on the other hand, argues that the language clearly states that Wilson is responsible for 50 percent of Desert Jet's legal fees because "[t]he Settlement Agreement does not actually use the phrase 'their own' or 'personal' to modify the Wilsons' obligation to 'assume 50% of the costs of suit and attorneys' fees, as well as 50% of any liability/verdict or settlement amount." *Reply II* 3:11–13.

The Court determines that, for the reasons stated by the parties, Section 22 can be reasonably interpreted both ways. Thus, the language of the Settlement Agreement is not unambiguous on its face.

        *b.*     *Language of the Settlement Agreement in Context*

Wilson also argues that McCool's interpretation is inconsistent with the other provisions of the Settlement Agreement. *Opp. II* 13:7–14. She explains that "it is nonsensical that [Wilson] and Rob would agree to take on not only half of their representation . . . but also half of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 19-2499 PSG (KKx) | Date | July 23, 2021 |
|---|---|---|---|
| Title | James D. McCool v. Denise Wilson et al | | |

the Company's representation . . ., in consideration of a settlement that included Counter Defendants' full buyout and divestiture of all of [Wilson's] and Rob's interests in the Company, as well as a global and mutual release of all claims." *Id.*

McCool counters that his interpretation is consistent with the rest of the Settlement Agreement. *Reply II* 5:24–6:9. He explains that, due to the full buyout, "instead of being a 51% owner of entities that were covering the total, collective *Kramer* litigation liabilities involv[ing] alleged harassment by her husband, Wilson would be a 0% owner of those entities with millions of dollars in her pocket." *Id*. Thus, "Section 22 ensured that Wilson would continue to incur 50% responsibility for the total, collective *Kramer* litigation liabilities." *Id*. He further argues that "[r]educing Wilson and [Rob's] obligations and incentives to cooperate would be counter to the premise of the entire transaction and resolution of the parties' dispute, which centered around allegations that Wilson never disclosed this liability to McCool prior to his investment in the Desert Jet entities," and involved a lawsuit that "had nothing to do with Desert Jet's business operations." *Id.*; *Second Declaration of James D. McCool*, Dkt. # 152-1 *("McCool Decl. II")*, ¶ 3.

Again, the Court finds that the inferences both parties draw from the structure of the Settlement Agreement are reasonable, for the reasons stated by the parties. Thus, the structure of the Settlement Agreement does not clarify the ambiguity in Section 22's language.

        c.     *Extrinsic Evidence*

Finally, Wilson argues that the parties' course of dealing prior and subsequent to the Settlement Agreement supports her interpretation. *Opp. II* 11:24–12:13. First, she explains that her interpretation is correct because Wilson and Rob never paid for Desert Jet's legal fees before or after the Settlement Agreement. *Id.* The Court is not convinced by this argument—Wilson and Rob never paid for *their own* legal fees before the Settlement Agreement, but Wilson does not dispute that the Settlement Agreement made her and Rob responsible for 50 percent of their own legal fees. Thus, it is not unreasonable that the Settlement Agreement also changed the payment scheme regarding Desert Jet's legal fees.

Second, Wilson highlights that McCool did not ask Wilson for any payment for Desert Jet's legal fees until October 8, 2020, over four months after the May 27 effective date, and after Wilson "refused to contribute more than an agreed total amount for a settlement of the *Kramer* litigation." *Id.* 7:27–8:2; 11:24–12:13. She claims that, given this delayed request, McCool's interpretation is "nonsensical" because Section 22 requires prompt payment within 90 days of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 19-2499 PSG (KKx) | Date | July 23, 2021 |
|---|---|---|---|
| Title | James D. McCool v. Denise Wilson et al | | |

accrual. *Id*. 12:6–10. The Court disagrees because, as explained above, the Settlement Agreement does not define when fees "accrue" for purposes of Section 22. Further, four months is not an unreasonable delay. Had McCool's counsel sent the first invoice one or two years after the May 27 effective date, Wilson's argument might be more convincing. However, McCool's counsel's slight delay in gathering and preparing an invoice does not call into question his interpretation of Section 22.

McCool also insists that the parties' course of dealing supports his interpretation. He points to an email exchange sent during settlement negotiations where the parties discussed that the attorneys' fees provision had to "run both ways," and Wilson's attorneys stated that "nobody wants to be left holding the bag on the other side of 50%." *Mot. II* 5:11–15; Dkt. # 152-4 at 4. But, similar to the language in Section 22, these emails are reasonable under both parties' interpretations, and they do not specifically define "50%."

Finally, McCool states that his interpretation must be correct because, on July 1, 2020, Wilson's attorneys asked to amend the Settlement Agreement to clarify Section 22. *Mot. II* 5:15–18; Dkt. # 152-7 at 2–5. The Court disagrees. Instead, the need for clarification supports the Court's determination that the Settlement Agreement is ambiguous.

### d. Conclusion

Accordingly, after examining the contract language and structure, as well as the extrinsic evidence submitted by the parties, the Court finds that both parties' interpretations are reasonable, and that Section 22 is ambiguous. However, the Court also finds that there are no conflicts in the extrinsic evidence, and that there are only conflicts in the inferences to be drawn from the evidence. As such, the Court must construe the Settlement Agreement as a matter of law. *See Walt Disney*, 162 Cal. App. 4th at 1126.

McCool argues that the Settlement Agreement must be construed against Wilson because she drafted it. *Mot. II* 5:9–10. Wilson does not address this argument, and therefore she conceded it. *Tapia*, 2015 WL 4650066, at *2. Further, she does not argue that, even if the contract is ambiguous, her interpretation is correct. As such, the Court finds that Section 22 mandates that Wilson and Rob pay 50 percent of *all* costs and legal fees in the *Kramer* litigation, including those incurred by Desert Jet. This interpretation is also supported by the fact that Section 22 makes Wilson and Rob responsible for 50 percent of the *entire* liability or settlement amount, not 50 percent of their share of the liability or settlement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 19-2499 PSG (KKx) | Date | July 23, 2021 |
|---|---|---|---|
| Title | James D. McCool v. Denise Wilson et al | | |

Accordingly, the Court **GRANTS** McCool's motion and **DENIES** Wilson's motion on this ground. As such, the Court **ORDERS** Wilson to pay $78,765.78 in attorneys' fees incurred to date within 90 days of this order.

B.   Other Breaches Discussed in Wilson's Motion

The Court addresses the remaining breaches as follows: (1) failure to timely apprise Wilson of the company's efforts to remove her as a party or guarantor to any company agreements, loans, or guarantees; (2) disparaging statements in this case; and (3) violations of the tax requirements.

*i.   Timely Apprising Wilson of her Removal as a Party or Guarantor*

Under Section 8 of the Settlement Agreement, Desert Jet agreed to take "commercially reasonable actions" to remove Wilson as a party to Desert Jet agreements, loans, and guarantees, and to apprise Wilson of its efforts to do so upon Wilson's request. *Settlement Agreement* ¶ 8. Wilson was to "notify [Desert Jet] of any such agreement of which she is aware," and the parties promised to "cooperate in a reasonably timely manner" to remove Wilson from company documents. *Id*. Further, Desert Jet promised to "indemnify Wilson for any claim, expense or liability incurred by Wilson if Wilson is not removed as a party to or a guarantor of any [Desert Jet] lease agreements, loans, and/or guarantees." *Id*.

Wilson suggests Section 8 places the burden on Desert Jet to determine whether Wilson was an obligor on Desert Jet's accounts and agreements. *Mot. I* 5:22–28. She claims that Desert Jet and McCool violated Section 8 because, "despite multiple oral and written requests and correspondence among counsel to the parties beginning in early June 2020," Desert Jet failed to provide Wilson with any notice that she was removed as a party from the company's documents. *Id.*; *Wilson Decl*. ¶ 24. She states that she continues to be contacted by entities and individuals claiming Desert Jet owes them funds and other obligations. *Wilson Decl*. ¶ 24.

However, the Settlement Agreement does not place the burden of finding accounts that list Wilson as an obligor solely on Desert Jet. Wilson was also required to inform Desert Jet of such agreements, and the parties agreed to cooperate to remove Wilson from company documents. *Settlement Agreement* ¶ 8. Further, according to the emails submitted in support of her motion, each time Wilson's counsel informed Desert Jet's counsel that Desert Jet vendors had contacted her regarding payment, Desert Jet contacted the vendor and "dealt with" the issue. *See Declaration of Nick S. Pujji*, Dkt. # 133-5 ("*Pujji Decl*."), Ex. B at 16–17.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 19-2499 PSG (KKx) | Date | July 23, 2021 |
|---|---|---|---|
| Title | James D. McCool v. Denise Wilson et al | | |

Additionally, Wilson insists that, as of April 13, 2021, Desert Jet failed to satisfy its agreement with and indebtedness of $70,000 to Lee Searing, who has continued to threaten holding Wilson personally liable. *Id*. ¶ 24. According to Wilson, Desert Jet's failure to pay Mr. Searing has caused Mr. Searing to retaliate against Wilson and Rob by (1) causing Rob's employment to be terminated and (2) revoking Mr. Searing's agreement to have Wilson sell his aircraft and purchase a replacement, causing a loss of over $200,000 in commission. *Id*. ¶ 25. This alleged breach also caused "severe prejudice and emotional distress" to Wilson and Rob because "they have also lost a relationship that was like family to them." *Id*. ¶ 25.

However, Wilson failed to argue that (1) she informed Desert Jet about Mr. Searing's indebtedness and (2) Desert Jet did not remedy the situation. As explained above, the Settlement Agreement required both parties to work together to remove Wilson as an obligor, and Desert Jet did not breach the agreement by failing to remedy a situation of which it was unaware. Further, McCool confirmed with Mr. Searing that, as of May 21, 2021, the company is in good standing with Mr. Searing. *See McCool Decl*. ¶ 8.

Accordingly, Desert Jet and McCool did not breach Section 8 of the Settlement Agreement and the Court **DENIES** Wilson's motion on this ground.

> ii. *Disparaging Statements*

Under Section 5, the parties agreed not to take any actions or make any statements that disparage, criticize, or harm another party to the Settlement Agreement. *Settlement Agreement* ¶ 5.

Wilson argues that McCool violated Section 5 (1) on July 31, 2020 by filing a First Amended Complaint in this lawsuit that states that Wilson's attorneys defrauded McCool "on Wilson's behalf," among other allegedly disparaging statements, and (2) on November 20, by filing a Second Amended Complaint with "nearly identical disparagement" of Wilson. *Mot. I* 8:20–9:17. She asserts that these disparaging statements have caused her "great harm[,] including [(1)] the loss of several financial and employment opportunities since their publication" and (2) reputational harm because Wilson's "colleagues and peers in the aviation industry have told her that they have seen these allegations online through the filings." *Id*. 9:18–22. According to Wilson, these statements were not necessary to pursue McCool's remaining claims against Wilson's attorneys because the Third Amended Complaint does not indicate that Wilson's attorneys acted on Wilson's behalf. *Id*. 9:23–10:10.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 19-2499 PSG (KKx) | Date | July 23, 2021 |
|---|---|---|---|
| Title | James D. McCool v. Denise Wilson et al | | |

McCool argues, and the Court agrees, that the allegedly disparaging statements in the amended complaints are protected by Section 3 of the Settlement Agreement, which states that "this Agreement does not limit *in any way* McCool and [Desert Jet's] pursuit of other Defendants in this Lawsuit." *Id*. ¶ 3(c) (emphasis added); *Opp. I* 8:3–14. Section 3 does not require that McCool decide whether certain statements are "necessary" to pursue his claims. Instead, it states that the Settlement Agreement provides *no limitation* on his ability to pursue the instant lawsuit. Wilson's interpretation reads a nonexistent limitation into Section 3's sweeping protection of McCool's ability to "maintain the Lawsuit against the other Defendants." *Settlement Agreement* ¶ 3(c).

Accordingly, the Court **DENIES** Wilson's motion on this ground.

      *iii.*    *Tax Matters*

The Settlement Agreement also contains a section entitled "Tax Matters." *Id*. ¶ 2. Under Section 2(c), McCool and Desert Jet were required to send Wilson the company's tax returns for (1) 2019 by July 1, 2020 and (2) 2020 by April 1, 2021, for Wilson's "review and consent." *Id*. ¶ 2(c). The tax returns were to be "prepared in a manner consistent with [Desert Jet's] past practice and custom." *Id*. McCool and Desert Jet were precluded from filing or amending any tax return regarding any tax period beginning on or before May 27, 2020 without Wilson's consent, which Wilson promised not to unreasonably withhold, delay, or condition, unless contrary to applicable law. *Id*. ¶ 2(d).

Wilson argues that McCool violated Section 2 as to both the 2019 and 2020 tax returns. The Court addresses each tax return in turn.

      *a.*    *2019 Tax Returns*

Wilson contends McCool violated Section 2 by (1) providing the draft tax documents to her past the July 1, 2020 deadline, and (2) filing tax returns without Wilson's approval whereby McCool personally claimed the entire loss for Desert Jet, which was inconsistent with Desert Jet's practice and custom because "the Company had never before filed tax returns that created an approximately $40,000 tax liability for [Wilson] personally." *Mot. I* 6:26–7:7. Such filing was also inappropriate because Wilson was the half-owner and chair of the board during the 2019 tax period. *Id*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 19-2499 PSG (KKx) | Date | July 23, 2021 |
|---|---|---|---|
| Title | James D. McCool v. Denise Wilson et al | | |

First, although the Court agrees with Wilson that McCool provided the draft tax documents past the deadline, Wilson has not explained how the short delay in receiving the documents caused any damage. Wilson's proposed order submitted with her motion does not include any request for injunctive relief or damages in connection with this breach. *See generally* Dkt. # 36.

Second, Wilson has failed to show that filing the 2019 Tax Returns violated the Settlement Agreement. Although she claims that the filing was not consistent with Desert Jet's past practice, her only evidence in support of this claim is that she incurred a $40,000 tax liability on the 2019 Tax Returns. *Mot. I* 7:1–7. Wilson fails to provide any other contextual information, such as her tax liability on returns for previous years or a description of Desert Jet's past filing practice. The Court cannot determine whether the 2019 Tax Returns are inconsistent with past practice without any information regarding past practice.

Wilson also argues that filing the 2019 Tax Returns violated Section 2 because Wilson did not consent to them. *Id.* 7:14–18. However, Section 2 prohibits Wilson from unreasonably withholding, delaying, or conditioning her consent unless contrary to applicable law. *Settlement Agreement* ¶ 2(d). According to Wilson, she "demanded from July through September 2020 in writing that the Company fix its returns to comply with past practice and the Settlement Agreement, as well as its actual ownership and governance structure in 2019 and applicable tax law." *Mot. I* 7:8–12. But based on the emails submitted by Wilson, Wilson never provided any support to McCool for her assertions that the 2019 Tax Returns violated past practice or applicable law. *See, e.g.*, Dkt. # 133-5 at 17. Further, emails submitted by McCool demonstrate that Wilson's accountant was not concerned about any tax law violations. *See generally* Dkts. # 140-17, 140-18, 140-19, 140-20.

Accordingly, Wilson had three months—from July through September 2020—to work out her issues with the 2019 Tax Returns, yet she failed to support her decision to withhold consent. Thus, Wilson unreasonably withheld consent, and McCool was within his rights to submit the 2019 Tax Returns without her consent. The Court **DENIES** Wilson's motion on this ground.

        b.      *2020 Tax Returns*

Finally, Wilson argues that McCool similarly violated Section 2 as to the 2020 Tax Returns because he failed to submit them to her for her review by the April 1 deadline. *Mot. I* 7:24–8:11. In her reply, Wilson states that McCool "belatedly provided a *draft* K-1 on or around

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 19-2499 PSG (KKx) | Date | July 23, 2021 |
|---|---|---|---|
| Title | James D. McCool v. Denise Wilson et al | | |

May 17, 2021." *Reply I* 7:1–3. She claims that she cannot timely file her personal tax returns without a finalized K-1 which means she will incur late fees. *Id*. 7:3–4.

The Court agrees with Wilson. As such, the Court **GRANTS** Wilson's motion on this ground and **ORDERS** McCool to deliver the final 2020 Tax Return within 7 days of this order.

However, the Court disagrees with Wilson that McCool's decision to personally claim the entire loss for Desert Jet in 2020 inherently violates the Settlement Agreement. Per the terms of the Settlement Agreement, Wilson cannot unreasonably withhold her consent without some support for her contention that such a filing would violate past practice or tax law. *Settlement Agreement* ¶ 2(d). Accordingly, the Court declines to order McCool to file the 2020 Tax Returns in a specific manner.

    C.    <u>Attorneys' Fees and Costs</u>

Both parties request attorneys' fees and costs under 28 U.S.C. § 1927 in connection with the instant motions. *Mot. I* 16:4–18:9; *Opp. I* 13:15–15:4. "[S]ection 1927 sanctions 'must be supported by a finding of subjective bad faith.'" *In re Keegan*, 78 F.3d 431, 436 (9th Cir. 1996); *Chambers v. NASCO*, 501 U.S. 32, 45–46 (1991).

While the Court agrees that both parties have "unreasonably and vexatiously multpli[ed] proceedings" in this case, *Mot. I* 16:8–9, and that the attorneys should have been able to work out these issues on their own, the Court finds that it was the poor wording of the Settlement Agreement, rather than the parties' bad faith, that caused the main dispute regarding Section 22. Further, Wilson has failed to demonstrate that McCool's failure to timely send the 2019 and 2020 tax returns was due to bad faith.

Accordingly, the Court **DENIES** the parties' requests for attorneys' fees and costs.

IV.    <u>Conclusion</u>

For the foregoing reasons, the Court **GRANTS** McCool's motion and **GRANTS IN PART** and **DENIES IN PART** Wilson's motion as follows:

- The Court **GRANTS** McCool's motion to enforce Section 22 of the Settlement Agreement, **ORDERS** Wilson to pay $78,765.78 in attorneys' fees incurred to date within 90 days of this order, and **ORDERS** Wilson to pay invoices of any

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 19-2499 PSG (KKx) | Date | July 23, 2021 |
|---|---|---|---|
| Title | James D. McCool v. Denise Wilson et al | | |

additional attorneys' fees and expenses incurred for the defense of the *Kramer* litigation within 90 days of accrual.

- The Court **GRANTS** Wilson's motion to enforce Section 2 of the Settlement Agreement as it pertains to the 2020 Tax Return and **ORDERS** McCool to deliver the final 2020 Tax Return within 7 days of this order.

- The Court **DENIES** the remainder of Wilson's motion.

- The Court **DENIES** the parties' requests for attorneys' fees and costs in connection with these motions.

**IT IS SO ORDERED.**